## IN THE UNITED STATES DISTRICT
## COURT FOR THE DISTRICT OF PUERTO RICO

RAFAEL MASS-LUCIANO,
CARLOS A. HERNANDEZ,
GERMAN CUEVAS-SOLER,
ISMEL MELENDEZ-ROSA,
ISMAEL MELENDEZ-GARCIA,
SANTIAGO OTERO-MEJIAS, and
VIRKARINA MENDEZ-CABASQUINI,

       Plaintiffs,

v.

3M COMPANY,

       Defendant.

Case No. _____

JURY TRIAL DEMANDED

## **COMPLAINT**

Plaintiffs, Rafael Mass-Luciano ("Mass-Luciano"), Carlos A. Hernandez ("Hernandez"),

German Cuevas-Soler ("Soler"), Ismel Melendez-Rosa ("Melendez-Rosa"), Ismael Melendez-

Garcia ("Melendez-Garcia"), Santiago Otero-Mejias ("Otero-Mejias"), and Virkarina Mendez-

Cabasquini ("Mendez-Cabasquini") (collectively, "Plaintiffs"), by and through undersigned

counsel, bring this Complaint against Defendant 3M Company ("Defendant" or "3M") for

permanent personal injuries incurred while in training and/or on active military duty domestically

and abroad, resulting from Defendant's defective and unreasonably dangerous product, the Dual-

ended Combat Arms™ earplugs (Version 2 CAEv.2) ("Dual-ended Combat Arms earplugs" or

"Earplugs"). Based upon information and belief, Plaintiffs state as follows

### I.     **INTRODUCTION**

1.     Plaintiffs bring the instant case to recover for their own losses and to hold 3M

accountable for its actions.

2.      This is a negligence and product liability action related to a defective earplug manufactured and sold by Defendant.  Plaintiffs used Defendant's Dual-ended Combat Arms earplugs and, as a result of its defective condition, now suffer from hearing loss and tinnitus.

3.      Plaintiffs used Defendant's dangerously defective Dual-ended Combat Arms earplugs during training and active duty domestically and/or abroad which included, but is not limited to, live fire training, vehicle use and maintenance, and/or other training and exercises in noise hazardous conditions.

4.      Defendant was aware of the defect(s) and risks associated with the Dual-ended Combat Arms earplugs, but regardless of the risk sold them to the U.S. military for more than a decade without the military and/or Plaintiffs having knowledge of their defect(s) and risks.

5.      Defendant failed to warn or instruct the military and/or Plaintiffs of the defect(s) and risks associated with the Dual-ended Combat Arms earplugs.

6.      Use of Defendant's Dual-ended Combat Arms earplugs caused users, including Plaintiffs, to suffer significant hearing loss, tinnitus, and/or additional injuries related to hearing.

7.      Defendant's Dual-ended Combat Arms earplugs were provided to certain branches of the military (including Plaintiffs') between at least 2003 and 2015. Thus, use of Defendant's Dual-ended Combat Arms earplugs has likely caused thousands, if not millions, of soldiers to suffer significant hearing loss, tinnitus, and additional injuries related to hearing loss, including but not limited to pain and suffering and loss of the pleasures of life.

8.      Plaintiffs all suffer from hearing loss. Prior to diagnosis or hearing loss and Plaintiffs' use of the Dual-ended Combat Arms earplugs, Plaintiffs had never suffered from hearing loss or tinnitus.

## II.     JURISDICTION

9.      This Court has subject matter jurisdiction pursuant 28 U.S.C. §1332(a)(1). The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and Plaintiffs and Defendant are citizens of different states.

10.      This Court exercises personal jurisdiction pursuant to 32 L.P.R.A. Ap. III R. 4.7. The Defendants are doing business in Puerto Rico and are subject to jurisdiction through the Commonwealth's long-arm statute.

11.      Venue is appropriate because a substantial part of the acts giving rise to Plaintiff and the class members' claims occurred in this region. Defendants conduct substantial business in Puerto Rico, distribute Dual-ended Combat Arms earplugs in this region, receive substantial compensation and profits from sales of Dual-ended Combat Arms earplugs in this region, and made material omissions and misrepresentations and breaches of warranties in this region so as to subject it to *in personam* jurisdiction in this region.

12.      Defendant conducted business in Puerto Rico and because Defendant was engaged in testing, developing, manufacturing, labeling, marketing, distributing, promotion and/or selling, either directly or indirectly, and/or through third parties or related entities, Dual-ended Combat Arms earplugs; thus, there exists a sufficient nexus between Defendant forum contacts and the Plaintiff's claims to justify assertion of jurisdiction in Puerto Rico.

13.      This Court has *in personam* jurisdiction over Defendant, because Defendant is/was present in Puerto Rico such that requiring an appearance does not offend traditional notices of fair play and substantial justice.

14.     Upon information and belief, at all times, Defendant transacted, solicited, and conducted business in the Commonwealth of Puerto Rico and derived substantial revenue from such business.

### III.     THE PARTIES

15.     Plaintiff, Rafael Mass-Luciano, is a natural person and a resident of the Commonwealth of Puerto Rico.  Mass-Luciano was deployed in Iraq from 2003-2004, and has been in the U.S. Military with a home base of Fort Buchanan, Puerto Rico since 2000.  Throughout all of his deployments and his time in Fort Buchanan he used 3M Earplugs while being exposed to, among other things, gunfire, military vehicles, and generators.  Mass-Luciano was diagnosed with tinnitus and received a disability rating for hearing loss of 10%.

16.     Plaintiff, Carlos A. Hernandez, is a natural person and a resident of the Commonwealth of Puerto Rico.  Hernandez was deployed in Kuwait from 2004-2005, Afghanistan from 2012-2013 and has been in the U.S. Military with a home base of Salinas, Puerto Rico since 2000.  Throughout all of his deployments and his time in Salinas, Hernandez used 3M Earplugs while being exposed to, among other things, gunfire, military vehicles, generators, and doing quality control for weapons.  Hernandez suffers from hearing loss.

17.     Plaintiff, German Cuevas-Soler, is a natural person and a resident of the Commonwealth of Puerto Rico.  Soler was deployed in Iraq from 2004-2005 and Kuwait in 2014.  Throughout all of his deployments, Soler used 3M Earplugs while being exposed to, among other things, gunfire, military vehicles, generators, and explosions.  In or around July of 2016, Soler was diagnosed with hearing loss and tinnitus. It has caused him pain including aggravated migraines.

18.     Plaintiff, Ismel Melendez-Rosa, is a natural person and a resident of the Commonwealth of Puerto Rico.   Melendez-Rosa was deployed in Iraq from 2003-2004.

Throughout his deployment, Melendez-Rosa used 3M Earplugs while being exposed to, among other things, gunfire, military vehicles, generators, and explosions.  In or around March of 2015, Melendez-Rosa received a disability rating for hearing loss of 10%. The ringing and buzzing is continuous and causes him anxiety and insomnia.

19.     Plaintiff, Ismael Melendez-Garcia, is a natural person and a resident of the Commonwealth of Puerto Rico.  Melendez-Garcia was deployed at Fort Buchanan, Puerto Rico from 2004-2006, Camp Shelby, Mississippi from 2007-2009 and thereafter served in the Army Central Command in Kuwait.  Throughout all of his deployments, Melendez-Garcia used 3M Earplugs while being exposed to, among other things, gunfire, military vehicles, generators, and explosions.  In December of 2011, Melendez-Garcia was diagnosed with hearing loss and tinnitus. It has resulted in anxiety and depression due to irritation.

20.     Plaintiff, Santiago Otero-Mejias, is a natural person and a resident of the Commonwealth of Puerto Rico.  Otero-Mejias was deployed in Kuwait from 2003-2005 and then again in Kuwait by the Iraq border from 2017-2018.  Throughout all of his deployments, Otero-Mejias used 3M Earplugs while being exposed to, among other things, gunfire, military vehicles, generators, and explosions.  After 2004, Otero-Mejias started to notice hearing loss and was later diagnosed with hearing loss at 10% disability rating and tinnitus. It has caused him anxiety and sleep disorder.

21.     Plaintiff, Virkarina Mendez-Cabasquini, is a natural person and a resident of the Commonwealth of Puerto Rico.  Mendez-Cabasquini was deployed in Camp Shelby, Mississippi in 2005 and then went to Kuwait and Iraq between 2005-2006. Additionally, Mendez-Cabasquini has spent time serving in Salinas, Puerto Rico; Fort Jackson, South Carolina; and Fort Benning, Georgia.  Throughout all of his deployments, Mendez-Cabasquini used 3M Earplugs while being

exposed to, among other things, gunfire, military vehicles, generators, and doing quality control for weapons.  In approximately 2018, Mendez-Cabasquini was diagnosed with tinnitus. It has caused him to be unable to sleep or concentrate and has caused him anxiety.

22.    upon information and belief, Defendant 3M Corporation ("3M") is a Delaware corporation with its principal place of business in St. Paul, Minnesota. At all times relevant, 3M was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, advertising, and delivering, and/or introducing into interstate commerce throughout the United States and Puerto Rico, either directly or indirectly through third parties, subsidiaries or related entities, Dual-ended Combat Arms earplugs. Upon information and belief, at all times, 3M transacted, solicited, and conducted business in Puerto Rico and derived substantial revenue from such business.

23.    Defendant 3M has a dominant market share in virtually every safety product market, including hearing protection.

24.    Defendant 3M is one of the largest companies in the country.

25.    3M's subsidiaries include 3M Occupational Safety LLC, Aearo Holding LLC, which was formerly known as Aearo Holding Corporation, Aearo Intermediate LLC. which was formerly known as Aearo Technologies, Inc., Aearo Intermediate LLC, Aearo LLC, which was formerly known as Aearo Corporation, and Aearo Technologies LLC (collectively referred to as the "3M subsidiaries").

26.    Defendant 3M acquired the 3M Subsidiaries' liabilities and, as a result, Defendant 3M is liable for the 3M Subsidiaries' liability.  When referencing Defendant 3M, the 3M Subsidiaries are also included in the reference.

27.     The Dual-ended Combat Arms earplugs were originally created, made, manufactured, constructed, assembled, designed, formulated, tested, promoted, advertised, marketed, distributed and/or sold by the Aearo entities.

## IV.     FACTUAL ALLEGATIONS

28.     Defendant's Dual-ended Combat Arms earplugs were intended to provide linear and non-linear/selective attenuation hearing protection. Non-linear attenuation is also called level-dependent hearing protection. The earplugs were designed to purportedly provide soldiers with two different options for hearing attenuation depending upon which end of the earplugs was inserted into the ear.

29.     In addition to providing hearing protection, the Dual-ended Combat Arms earplugs were designed to help provide situational awareness by protecting against concussive disorientation effects associated with impulse noise.



The design of the yellow or non-linear end was intended to allow users, including Plaintiffs, to hear low level sounds, such as a person speaking in close range. This was one of the characteristics that caused the military to purchase the Dual-ended Combat Arms earplugs from Defendant.

30.     One end of the Dual-ended Combat Arms earplug (the olive end) was marketed, advertised, and promoted by Defendant to act as a traditional earplug and block as much sound as possible (the "closed" end or "blocked" position).

31.     The other end of the Dual-ended Combat Arms earplug (the yellow end) was marketed, advertised, and promoted by Defendant to reduce loud impulse sounds such as battlefield explosions and artillery fire, while also allowing the user to hear quieter noises such as commands spoken by fellow soldiers and approaching enemy combatants (the "open" end or "unblocked" position).

32.     Regardless of which end was inserted into the ear, at all relevant times both ends of the Dual-ended Combat Arms were marketed, advertised, and promoted by Defendant as providing sufficient and/or adequate protection.

33.     Defendant's Dual-ended Combat Arms earplugs were sold to the military beginning in at least late 2003 and continued to be sold directly and indirectly by Defendant to the military and other civilians through 2015, when Defendant discontinued the earplugs.

34.     Defendant's Dual-ended Combat Arms earplugs were also sold commercially to civilian users during this timeframe.

35.     Users, including the Plaintiffs, received Defendant's standard fitting instructions with respect to both ends of the Dual-ended Combat Arms earplug. These instructions are the same for both ends—directing the user to grasp the earplug by the stem and insert it into the ear canal.

36.     The design of the Dual-ended Combat Arms earplugs is defective because it prevents a snug fit and proper seal in the ear canal of the user.

37. When inserted according to Defendant's standard fitting instructions, the edge of the third flange of the non-inserted end of the earplug presses against the users, including Plaintiffs'' ear

canals and fold back; when the inward pressure on the earplug is released, the folded back flange returns to its original shape which can cause loosening of the seal in the user's ear canal and thus inadequate hearing protection.

38. Defendant did not provide an adequate warning of this inherent defect and risk even though Defendant was aware of this defect and risk at all relevant times.

39. Because the Dual-ended Combat Arms earplugs are symmetrical, following Defendant's standard fitting instructions results in a loosening of the fit and seal regardless of which side of the earplug is inserted into the ear canal.

### History of Testing: January 2000

40. Defendant began testing the Dual-ended Combat Arms earplugs in approximately December 1999 or January 2000.

41. The purpose of this initial testing was to determine the Noise Reduction Rating ("NRR") of the Dual-ended Combat Arms earplugs.

42. Hearing protection devices are classified by their potential to reduce noise in decibels ("dB"), a term used to categorize the power or density of sound.

43. Hearing protection devices must be tested and approved by the American National Standards Institute ("ANSI") in accordance with the Occupational Safety & Health Administration ("OSHA") guidelines.

44. NRR is a unit of measurement used to determine the effectiveness of hearing protection devices to decrease sound exposure within a given working environment, or attenuation.

45. The higher the NRR number associated with a hearing protection device, the greater the potential for noise reduction.

46. Earplugs, including the Dual-ended Combat Arms earplugs, are required to be sold with a stated NRR that accurately reflects the effectiveness of hearing protection.

47. Defendant chose to conduct this testing at their own laboratory rather than at an outside, independent laboratory.

48. Defendant's employees personally selected ten test subjects to test the Dual-ended Combat Arms earplugs, some of whom were employees of Defendant.

49. In an effort to purportedly determine the NRR of the Dual-ended Combat Arms earplug, Defendant designed the January 2000 test to capture: (1) each subject's hearing without an earplug inserted; (2) each subject's hearing with the open end of the Dual-ended Combat Arms earplug inserted (the unblocked position); and (3) each subject's hearing with the closed end of the Dual-ended Combat Arms earplug inserted (the blocked position).

50. Defendant's personnel monitored the results of each subject as the test was being performed. This type of monitoring allowed Defendant to stop the test if the desired NRR results were not achieved.

51. Eight of the ten subjects were evaluated using the closed end of the Dual-ended Combat Arms earplugs.

52. Testing of these eight subjects revealed an average NRR of 10.9, which was far below the intended and desired NRR necessary for adequate hearing protection for users, including Plaintiffs.

53. Because Defendant's personnel were monitoring the results of each subject as the test was being performed, and because the test results were well below the intended and desired NRR necessary for adequate hearing protection after the testing of these eight subjects, Defendant prematurely terminated the January 2000 testing of the closed end of the Dual-ended Combat Arms earplugs.

54. Defendant's personnel decided not to test the closed end of the Dual- ended Combat Arms earplugs for two of the ten subjects because the results were well below the intended and desired NRR for adequate hearing protection in the other test subjects.

55. In looking into the cause of the low NRR, Defendant's personnel determined that when the closed end of the earplug was inserted into the user's ear according to the standard fitting instructions, the basal edge of the third flange of the open end would press against the user's ear and fold backwards. When the inward pressure on the earplug was released, the flanges on the open end would return to their original shape and cause the earplug to loosen, often imperceptibly to the user.

56. Given the symmetrical nature of the Dual-ended Combat Arms earplugs, this defect that prevents a snug fit and good seal occurs when either end of the earplug is inserted according to the standard fitting instructions.

57. In January 2000, Defendant's personnel documented in the so-called "Flange Report" why the Dual-ended Combat Arms earplugs had failed to meet the necessary level of protection during testing; Defendant found that unless the opposing flange was folded back, the earplug would imperceptibly loosen and not provide the necessary level of hearing protection.

58. Imperceptible loosening would allow dangerous sound waves past the earplug and damage the user's hearing. This damage could result in hearing loss and tinnitus, which could be permanent in nature.

59. As to testing on the open end of the Dual-ended Combat Arms, Defendants completed testing of all ten subjects and obtained a facially invalid result of "-2" NRR, which would indicate that the open end of the earplug actually amplified sound, an unsound result with no valid scientific explanation.

60. Defendant's represented the "-2" NRR as a "0" NRR, which Defendant has displayed on the packaging of the Dual-ended Combat Arms earplugs since the earplugs were first launched.

61. Defendant falsely tout the "0" NRR as a benefit of the Dual-ended Combat Arms earplug by suggesting that soldiers will be able to hear their fellow soldiers and enemies while still providing some protection for impulse noise.

### History of Testing: February 2000

62. Upon identifying the fit and seal defect with their Dual-ended Combat Arms earplugs, Defendant re-tested the closed end of the Dual-ended Combat Arms earplug in February 2000 using a different insertion method, contrary to the ultimate instructions that would be provided to the military or users, including Plaintiffs  ("February 2000 testing").

63. When testing the closed end of the Dual-ended Combat Arms earplugs, Defendant's personnel folded back the yellow flanges on the open end prior to inserting the closed end into the ear in order to create a tighter fit and seal.

64. As a result of this reconfigured fitting procedure, Defendant achieved a "22" mean NRR on the closed end of the Dual-ended Combat Arms earplugs.

65. Defendant has displayed this 22 NRR on the packaging of the Dual- ended Combat Arms earplugs since the earplugs were first "made available to consumers (both military and commercial)."

66. Defendant, however, failed to properly warn military personnel and other users, including Plaintiffs, of the Dual-ended Combat Arms earplugs that the only potential way to achieve this purported NRR of "22" was to modify the Dual-ended Combat Arms earplug by folding the flanges back on the opposite end.

67. The open end of the Dual-ended Combat Arms earplug was not re- tested using the reconfigured fitting procedure.

**<u>Defendant's Representations and Omissions</u>**

68. As early as 2000, Defendant was aware of the dangerous design defects associated with their Dual-ended Combat Arms earplugs and the fact that the earplugs inadequately protected the hearing of users, including Plaintiffs.

69. Defendant knew the defective design of the Dual-ended Combat Arms earplugs could cause the earplugs to loosen in the user's ear—imperceptible to not only the user but also trained audiologists visually observing a user—thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug, while the user and/or audiologist incorrectly believed that the earplug worked as intended.

70. From 2003 to 2012, Defendant was the exclusive supplier of Dual-ended Combat Arms earplugs to U.S. military personnel.

71. At the time when Defendant became the exclusive supplier of Dual-ended Combat Arms earplugs to U.S. military personnel, Defendant was aware of the products' defects that failed to protect users, including Plaintiffs, from loud sounds.

72. Defendant did not adequately warn of the defects with the Dual-ended Combat Arms earplugs.

73. Defendant did not adequately warn or instruct the users, including Plaintiffs, of the Dual-ended Combat Arms earplugs how to properly wear and insert them to achieve their advertised and promoted NRR rating.

74. Defendant expressly certified that the Dual-ended Combat Arms earplugs complied with the Salient Characteristics of Medical Procurement Item Description ("MPID") of Solicitation No. SP0200-06-R-4202.

75. Defendant knew at the time they made their certifications that the Dual-ended Combat Arms earplugs did not comply with the MPID.

76. The pertinent Salient Characteristics set forth in the MPID, which were uniform across all military Requests for Proposals, are, in relevant part, as follows:

2.1.1. Earplugs shall be designed to provide protection from the impulse noises created by military firearms, while allowing the user to clearly hear normal speech and other quieter sounds, such as voice commands, on the battlefield.

2.2.2. The sound attenuation of both ends of the earplugs shall be tested in accordance with ANSI S3.19.

**2.4 <u>Workmanship</u>. The earplugs shall be free from all defects that detract from their appearance or impair their serviceability.**

**2.5 <u>Instructions</u>. Illustrated instructions explaining the proper use and handling of the earplugs shall be supplied with each unit.**

Solicitation No. SP0200-06-R-4202 at 41-42 (emphasis added).

77. Defendant also knowingly used the results of the deliberately manipulated and flawed retest of the closed end of the earplugs to sell Dual-ended Combat Arms earplugs to the military with the representation that the earplugs possessed a "22" NRR in the closed position and would provide good fit and seal for users, including Plaintiffs.

78. Defendant included standard instructions for "proper use" of the earplugs in the packaging for the earplugs as required by the Noise Control Act, and the MPID.

79. Defendant's standard instructions for "proper use" of their Dual-ended Combat Arms earplugs do not instruct all users, including Plaintiffs  to use the "reconfigured" insertion method that was used in the February 2000 testing—a method that would require the user to fold back the

14

flanges of the opposite end before inserting the earplug into the ear to achieve good fit and seal and adequate attenuation.

80. Defendant's standard instructions for "proper use" of their Dual-ended Combat Arms earplugs do not warn users, including Plaintiffs, that the subjects who tested the earplugs did not follow these standard instructions, or that the earplugs only received the "22" NRR because the subjects used the reconfigured insertion method, which required them to fold back the flanges of the opposite end before inserting the earplug into the ear.

81. Instead, Defendant's standard instructions for "proper use" of their Dual-ended Combat Arms earplugs improperly direct users, including Plaintiffs, to simply insert the earplugs into the ear canal.

82. By failing to properly instruct users, including Plaintiffs, of the Dual-ended Combat Arms earplug to fold back the flanges on the non-inserted end of the earplug before inserting the opposite end of the earplug into their ears (which is necessary to achieve the promoted "22" NRR), Defendant falsely overstated the amount of hearing protection provided by the closed end of the Dual-ended Combat Arms earplug.

83. Defendant likewise misstated the amount of hearing protection provided by the open end of the Dual-ended Combat Arms earplug.

84. Defendant's labeling, packaging, and marketing of the Dual-ended Combat Arms earplugs' standard instructions is misleading to the user and has caused thousands of users, including Plaintiffs, to suffer significant hearing loss and tinnitus, and has further exposed millions more to the risk caused by their defective Dual-ended Combat Arms earplugs.

85. Defendant's labeling, packaging and marketing of the Dual-ended Combat Arms earplugs' standard instructions with an NRR of "22" with corresponding instructions to simply insert the

earplugs into the ear canal is misleading to the user and has caused thousands of users, including Plaintiffs, to suffer significant hearing loss and tinnitus, and has further exposed millions more to the risk caused by their defective Dual-ended Combat Arms earplugs.

86. Despite knowing that their flawed testing of the Dual-ended Combat Arms earplugs to achieve the "22" NRR involved steps to manipulate the fit of the Dual-ended Combat Arms earplugs, Defendant's instructions for use for the Dual-ended Combat Arms earplugs do not instruct, and never have instructed, the user to fold back the flanges on the open end of the plug before inserting the closed end of the plug into their ear to achieve proper fit and seal necessary for adequate attenuation.

87. Defendant's instructions that instead direct the user to simply insert the earplugs into the ear canal are facially inadequate.

88. In product packaging, Defendant misled users, including Plaintiffs, by providing a mere "fitting tip" that suggest that fitting could be improved if the sealing rings of the outward directed plug are rolled back upon themselves. This "fitting tip" was misleading in that it did not inform users, including Plaintiffs  that folding back the flanges of the outer end was necessary to obtain proper fit and seal, and the level of NRR hearing protection as represented.

89. Defendant was aware prior to selling the earplugs to the military that its testing procedures and fitting instructions were unlawfully manipulated to obtain the NRRs they wanted on both ends of the Dual-ended Combat Arms earplugs, and Defendant continued to use these inaccurate NRRs to market and promote the earplugs for more than ten years without disclosing the design defect in the earplugs.

90. At all times material hereto, Defendant committed a continuing fraud in obfuscating and failing to disclose facts that were known to them relating to the fraudulent testing they performed—

facts that were not discovered and could not have been discovered by Plaintiffs undertaking reasonable due diligence.

91. Plaintiffs did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendant, nor could Plaintiffs with reasonable diligence have discovered the true facts.

92. Plaintiffs could not have discovered that Plaintiffs' hearing damage was caused by a defect in the Dual-ended Combat Arms earplugs, due to the fact that the defect involved "imperceptible loosening."

93. On July 26, 2018, 3M agreed to pay $9.1 million to resolve allegations that it knowingly sold the Dual-ended Combat Arms Earplugs to the United States military without disclosing defects that hampered the effectiveness of the hearing protection device.

## V.      CAUSES OF ACTION

### Count I – Design Defect – Negligence

94. Plaintiffs incorporate by reference paragraphs 1-93 as if fully set forth herein.

95. At all times relevant to this action, Defendant had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, and distribute, the Dual-ended Combat Arms earplugs with reasonable and due care for the safety and well-being of soldiers , including the Plaintiffs, who were subject to and used the Dual-ended Combat Arms earplugs during their service with the U.S. military.

96. Plaintiffs were foreseeable users of the Dual-ended Combat Arms earplugs, and Defendant knew that the Dual-ended Combat Arms earplugs would be used by the Plaintiffs.

97. The Dual-ended Combat Arms earplugs are defective in that the design of the Earplugs causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting

damaging sounds to enter the ear canal by traveling around the outside of the Earplugs, while the user incorrectly believes that the Earplugs are working as intended.

98. When the Dual-ended Combat Arms earplugs are inserted into the ears according to the standard fitting instructions provided by Defendant, a proper seal is not formed with the ear canal.

99. The defect has the same effect regardless of which end is inserted because the Earplugs are symmetrical. In either scenario, the effect is that the Earplug may not maintain a tight seal in the wearers' ear canals, such that dangerous sounds can bypass the Earplug altogether, thereby posing serious risk to the wearer's hearing that are unbeknownst to him or her.

100.    Upon information and belief, Defendant failed to exercise reasonable and due care under the circumstances and, therefore, breached this duty in the following ways:

  a.  Defendant failed to design the Dual-ended Combat Arms earplugs in a manner which would result in an NRR of "22" when used with the closed, olive end inserted, according to the standard fitting instructions provided by Defendant;

  b.  Defendant failed to design the Dual-ended Combat Arms earplugs in a manner which would safely prevent against the injuries claimed by Plaintiffs;

  c.  Defendant failed to properly and thoroughly test the Dual-ended Combat Arms earplugs;

  d.  Defendant failed to properly and thoroughly analyze the data resulting from testing of the Dual-ended Combat Arms earplugs;

  e.  Defendant designed, manufactured, distributed, and sold the Dual-ended Combat Arms earplugs without an adequate warning of the significant and dangerous risks of the Earplugs;

f.   Defendant designed, manufactured, distributed, and sold the Dual-ended Combat Arms earplugs without providing adequate or proper instructions to avoid the harm which could foreseeably occur because of using the Earplugs in the manner Defendant's standard fitting instructions directed;

g.   Defendant failed to fulfill the standard of care required of a reasonable and prudent manufacturer of hearing protection products, specifically including products such as the Dual-ended Combat Arms earplugs; and

h.   Defendant negligently continued to manufacture and distribute the Dual- ended Combat Arms earplugs to the U.S. military after Defendant knew or should have known of their adverse effects and/or the availability of safer designs.

101.   Defendant knew or should have known that the defective condition of the Dual-ended Combat Arms earplugs made them unreasonably dangerous to the Plaintiffs who used the Earplugs.

102.   The Dual-ended Combat Arms earplugs were dangerous when used by ordinary persons, such as the Plaintiffs, who used it with the knowledge common to the U.S. military as to the product's characteristics and common usage.

103.   The Dual-ended Combat Arms earplugs were dangerous when used by ordinary persons, such as the Plaintiffs,  who followed the instructions provided by Defendant.

104.   Defendant knew or should have known of the defective design at the time the Dual-ended Combat Arms earplugs were used by Plaintiffs.

105.   At the time the Dual-ended Combat Arms earplugs left the possession of Defendant, the Dual-ended Combat Arms earplugs were defective in a condition which made them unreasonably dangerous to the ordinary soldier and the Plaintiffs.

106.     At the time the Dual-ended Combat Arms earplugs were used by Plaintiffs, the Dual-ended Combat Arms earplugs were in a condition which made them unreasonably dangerous to the ordinary soldier.

107.     At all relevant times, Plaintiffs used the Dual-ended Combat Arms earplugs in the manner in which they were intended.

108.     As designers, developers, manufacturers, inspectors, advertisers, distributors, and suppliers, of the Dual-ended Combat Arms earplugs, Defendant had superior knowledge of the Dual-ended Combat Arms earplugs and owed a duty of care to Plaintiffs.

109.     It was foreseeable that Defendant's actions, omissions, and misrepresentations would lead to severe, permanent, and debilitating injuries to Plaintiffs.

110.     The Dual-ended Combat Arms earplugs were the proximate cause of Plaintiffs' personal injuries – specifically Plaintiffs' sensorineural hearing loss and tinnitus. Defendant's conduct was a substantial factor in bringing about the injuries sustained by Plaintiffs because 3M designed, manufactured, tested, sold, and distributed the Dual-ended Combat Arms earplugs to the U.S. military.

111.     As a direct and proximate result of Defendant's negligence in designing the defective Dual-ended Combat Arms earplugs, Plaintiffs were caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and have further suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendant and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## **Count II - Design Defect – Strict Liability**

112.     Plaintiffs incorporate by reference paragraphs 1-93 as if fully set forth herein.

113.     Defendant is engaged in the business of designing, manufacturing, and selling the Dual-ended Combat Arms earplugs.

114.     Plaintiffs were foreseeable users of the Dual-ended Combat Arms earplugs.

115.     The Dual-ended Combat Arms earplugs are defective in that the design of the Earplugs causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the Earplugs while the user incorrectly believes that the Earplugs are working as intended.

116.     Defendant knew that the defective condition of the Dual-ended Combat Arms earplugs made it unreasonably dangerous to the Plaintiffs who used the device.

117.     The Dual-ended Combat Arms earplugs were dangerous when used by an ordinary user who used them as they were intended to be used.

118.     The Dual-ended Combat Arms earplugs were dangerous to an extent beyond which would be contemplated by the ordinary user who purchased and/or used the device because the design of the Dual-ended Combat Arms earplugs allows for dangerous sounds to bypass the Earplug altogether, thereby posing a serious risk to Plaintiffs hearing, unbeknownst to him or her.

119.     Defendant knew of the defective design at the time the Dual-ended Combat Arms earplugs were provided to Plaintiffs.

120.     At the time the Dual-ended Combat Arms earplugs left Defendant's possession, the Dual-ended Combat Arms earplugs were defective and were in a condition which made them unreasonably dangerous to Plaintiffs who used them.

121.     At the time the Dual-ended Combat Arms earplugs were used by Plaintiffs, the Dual-ended Combat Arms earplugs were defective and were in a condition which made them unreasonably dangerous to the Plaintiffs who used them.

122.     At all relevant times, Plaintiffs used the Dual-ended Combat Arms earplugs in the manner in which they were intended.

123.     The Dual-ended Combat Arms earplugs were the proximate cause of Plaintiffs' hearing loss and tinnitus because the short-stem design of the Earplugs allowed for dangerous sounds to bypass the Earplugs altogether thereby posing a serious risk to Plaintiffs' hearing, unbeknownst to them.

124.     Defendant's conduct was a substantial factor in bringing about Plaintiffs' personal injuries because Defendant designed, tested, manufactured, sold, and distributed the Dual-ended Combat Arms earplugs that caused Plaintiffs' hearing loss and tinnitus.

125.     As a direct and proximate result of Defendant's design defect, Plaintiffs were caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and have further suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendant and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### Count III - Failure to Warn – Negligence

126.     Plaintiffs incorporate by reference paragraphs 1-93 as if fully set forth herein.

127.     At all times relevant to this action, Defendant had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, and distribute, the Dual-ended Combat Arms earplugs with reasonable and due care for

the safety and wellbeing of Plaintiffs, who were subject to and used the Dual-ended Combat Arms earplugs during their service with the U.S. military.

128.     Plaintiffs were foreseeable users of the Dual-ended Combat Arms earplugs.

129.     The Dual-ended Combat Arms earplugs are defective, in part, in that the design of the Earplugs causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the Earplugs while the user incorrectly believes that the Earplugs are working as intended.

130.     The Dual-ended Combat Arms earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, as to the risk that the Dual-ended Combat Arms earplugs would allow for dangerous sounds to bypass the Earplugs altogether thereby posing a serious risk to Plaintiffs' hearing, unbeknownst to them.

131.     The Dual-ended Combat Arms earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, that subjects in testing did not follow Defendant's standard instructions for insertion, but rather the "modified" insertion method requiring the wearer to fold back the flanges of the opposite end before inserting the Earplug into the ear.

132.     The Dual-ended Combat Arms earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, that following Defendant's standard instructions for insertion would not achieve the "22" NRR and would thereby pose a serious risk to Plaintiffs' hearing, unbeknownst to them.

133.     The warnings and instructions that accompanied the Dual-ended Combat Arms earplugs failed to provide the level of information that an ordinary consumer would expect when using the Dual-ended Combat Arms earplugs in a manner reasonably foreseeable to Defendant.

134.     Had Plaintiffs received proper or adequate warnings or instructions as to the risks associated with the Dual-ended Combat Arms earplugs, including, but not limited to, instructing wearers to fold back the flanges on the open/unblocked end of the Earplugs before inserting the closed/blocked end of the Earplugs into the ear, Plaintiffs would have heeded the warning and/or instructions.

135.     The Dual-ended Combat Arms earplugs were the proximate cause of Plaintiffs' hearing loss and tinnitus because design of the Earplugs allows for dangerous sounds to bypass the Earplugs altogether thereby posing a serious risk to Plaintiffs' hearing, unbeknownst to them.

136.     As a direct and proximate result of Defendant's failure to warn, Plaintiffs were caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and have further suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendant and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### Count IV - Failure to Warn – Strict Liability

137.     Plaintiffs incorporate by reference paragraphs 1-93 as if fully set forth herein.

138.     Defendant is engaged in the business of designing, manufacturing, and selling the Dual-ended Combat Arms earplugs.

139.     Plaintiffs were foreseeable users of the Dual-ended Combat Arms earplugs.

140.     The Dual-ended Combat Arms earplugs are defective in that the design of the Earplugs causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the Earplugs while the user incorrectly believes that the Earplugs are working as intended.

141.     The Dual-ended Combat Arms earplugs are defective and unreasonably dangerous even if Defendant exercised all proper care in the preparation and sale of the product.

142.     Defendant knew that the defective condition of the Dual-ended Combat Arms earplugs made it unreasonably dangerous to the Plaintiffs who used the device.

143.     The Dual-ended Combat Arms earplugs were dangerous when used by an ordinary user who used it as it was intended to be used.

144.     The Dual-ended Combat Arms earplugs were dangerous to an extent beyond which would be contemplated by the ordinary user who purchased and/or used the device because the design of the Dual-ended Combat Arms earplugs allows for dangerous sounds to bypass the Earplugs altogether, thereby posing a serious risk to Plaintiffs' hearing, unbeknownst to him or her.

145.     Defendant knew of the defective design at the time the Dual-ended Combat Arms earplugs were provided to Plaintiffs.

146.     At the time the Dual-ended Combat Arms earplugs left Defendant's possession, the Dual-ended Combat Arms earplugs were defective and were in a condition which made them unreasonably dangerous to the Plaintiffs who used them.

147.     At the time the Dual-ended Combat Arms earplugs were used by Plaintiffs, the Dual-ended Combat Arms earplugs were defective and were in a condition that made them unreasonably dangerous to them.

148.     At all relevant times, Plaintiffs used the Dual-ended Combat Arms earplugs in the manner in which they were intended.

149.     The Dual-ended Combat Arms earplugs contained no warnings, or in the alternative, inadequate warnings and/or instructions, as to the risk that the Dual-ended Combat

Arms earplugs would allow for dangerous sounds to bypass the Earplugs altogether, thereby posing a serious risk to Plaintiffs' hearing, unbeknownst to them.

150.     The Dual-ended Combat Arms earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, that subjects in testing did not follow Defendant's standard instructions for insertion, but rather the "modified" insertion method requiring the wearer to fold back the flanges of the opposite end before inserting the Earplugs into the ears.

151.     The Dual-ended Combat Arms earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, that following Defendant's standard instructions for insertion would not achieve the "22" NRR and would thereby pose a serious risk to Plaintiffs' hearing, unbeknownst to them.

152.     The warnings and instructions that accompanied the Dual-ended Combat Arms earplugs failed to provide the level of information that an ordinary consumer would expect when using the Dual-ended Combat Arms earplugs in a manner reasonably foreseeable to Defendant.

153.     Had Plaintiffs received proper or adequate warnings or instructions as to the risks associated with the Dual-ended Combat Arms earplugs, including, but not limited to, instructing wearers to fold back the flanges on the open/unblocked end of the Earplugs before inserting the closed/blocked end of the Earplugs into the ears, Plaintiffs would have heeded the warning and/or instructions.

154.     The Dual-ended Combat Arms earplugs were the proximate cause of Plaintiffs' hearing loss and tinnitus because the short-stem design of the Earplugs allowed for dangerous sounds to bypass the Earplugs altogether thereby posing a serious risk to Plaintiffs' hearing, unbeknownst to them.

155.     Defendant's conduct was a substantial factor in bringing about Plaintiffs' personal injuries because Defendant designed, tested, manufactured, sold, and distributed the Dual-ended Combat Arms earplugs that caused Plaintiffs' hearing loss and tinnitus.

156.     As a direct and proximate result of Defendant's design defect, Plaintiffs were caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and have further suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendant and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### <u>Count V - Breach of Express Warranty</u>

157.     Plaintiffs incorporate by reference paragraphs 1-93 as if fully set forth herein.

158.     Through Defendant's public statements, descriptions of the Dual-ended Combat Arms earplugs, and promises relating to the Dual-ended Combat Arms earplugs, Defendant expressly warranted, among other things, that the Dual-ended Combat Arms earplugs were safe and effective for their intended use, and were designed and constructed to prevent harmful sounds from bypassing the Earplugs to protect the user's hearing.

159.     These warranties came in one or more of the following forms: (a) publicly made written and verbal assurances of safety; (b) press releases and dissemination via the media, or uniform promotional information that was intended to create a demand for the Dual-ended Combat Arms earplugs (but which contained material misrepresentations and utterly failed to warn of the risks of the Dual-ended Combat Arms earplugs); (c) verbal assurances made by Defendant's consumer relations personnel about the safety of the Dual-ended Combat Arms earplugs which

also downplayed the risks associated with the Dual-ended Combat Arms earplugs; and (d) false and misleading written information and packaging supplied by Defendant.

160.    When Defendant made these express warranties, it knew the purpose(s) for which the Dual-ended Combat Arms earplugs were to be used and warranted it to be in all respects safe and proper for such purpose(s).

161.    Defendant drafted the documents and/or made statements upon which these warranty claims are based and, in doing so, defined the terms of those warranties.

162.    The Dual-ended Combat Arms earplugs do not conform to Defendant's promises, descriptions, or affirmation of fact, and were not adequately packaged, labeled, promoted, and/or fit for the ordinary purposes for which such Earplugs are used.

163.    Plaintiffs further alleges that all of the aforementioned written materials are known to Defendant and in its possession, and it is Plaintiffs' reasonable belief that these materials shall be produced by Defendant and made part of the record once Plaintiffs are afforded the opportunity to conduct discovery.

164.    As a direct and proximate result of Defendant's breach of the express warranties, Plaintiffs were caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and have further suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendant and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## Count VI - Breach of Implied Warranties

165.    Plaintiffs incorporate by reference paragraphs 1-93 as if fully set forth herein.

28

166.    At all material times, Defendant was a merchant with respect to the Dual-ended Combat Arms earplugs.

167.    Plaintiffs were foreseeable users of the Dual-ended Combat Arms earplugs.

168.    At the time Defendant marketed, sold, and distributed the Dual-ended Combat Arms earplugs, Defendant knew of the use for which the Dual-ended Combat Arms earplugs were intended, impliedly warranted the Dual-ended Combat Arms earplugs to be fit for a particular purpose, and warranted that the Dual-ended Combat Arms earplugs were of merchantable quality and effective for such use.

169.    Defendant knew, or had reason to know, that Plaintiffs would rely on Defendant's judgment and skill in providing the Dual-ended Combat Arms earplugs for its intended use.

170.    Plaintiffs reasonably relied upon the skill and judgment of Defendant as to whether the Dual-ended Combat Arms earplugs were of merchantable quality, safe, and effective for its intended use.

171.    Contrary to such implied warranties, the Dual-ended Combat Arms earplugs were neither of merchantable quality, nor safe or effective for its intended use, because the Dual-ended Combat Arms earplugs were, and are, unreasonably dangerous, defective, unfit, and ineffective for the ordinary purposes for which the Dual-ended Combat Arms earplugs were used.

172.    The Dual-ended Combat Arms earplugs were defectively designed and manufactured, and were distributed and sold without the provision of reasonable instructions or warnings regarding the foreseeable risk of harm posed by the Dual-ended Combat Arms earplugs to Plaintiffs.

173.     As a direct and proximate result of Defendant's breach of implied warranties, Plaintiffs were caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and have further suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendant and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### Count VII - Fraudulent Misrepresentation

174.     Plaintiffs incorporate by reference paragraphs 1-93 as if fully set forth herein.

175.     Defendant falsely and fraudulently represented to Plaintiffs, and/or the public in general, that the Dual-ended Combat Arms earplugs had been properly tested and were free from all defects.

176.     Defendant intentionally manipulated testing of the Dual-ended Combat Arms earplugs, resulting in false and misleading NRRs and improper fitting instructions.

177.     The representations made by Defendant were, in fact, false.

178.     When Defendant made these representations, it knew those representations to be false and it willfully, wantonly, and recklessly disregarded whether the representations were true.

179.     Defendant made these representations with the intent of defrauding and deceiving Plaintiffs and the public in general, and with the intent of inducing Plaintiffs and the public in general, to recommend, purchase, and/or use the Dual-ended Combat Arms earplugs, all of which evince a callous, reckless, willful, depraved indifference to the health, safety, and welfare of Plaintiffs.

180.     At the time the aforesaid representations were made by Defendant, and at the time Plaintiffs used the Dual-ended Combat Arms earplugs, Plaintiffs were unaware of the falsity of said representations and reasonably believed them to be true.

181.     In reliance upon said representations, Plaintiffs were induced to and did use the Dual-ended Combat Arms earplugs, thereby sustaining severe and permanent personal injuries.

182.     Defendant knew and was aware, or should have been aware, that the Dual-ended Combat Arms earplugs had not been sufficiently tested, were defective in nature, and/or that they lacked adequate and/or sufficient warnings and instructions.

183.     Defendant knew or should have known that the Dual-ended Combat Arms earplugs had a potential to, could, and would cause severe and grievous injury to the users of said product.

184.     Defendant brought the Dual-ended Combat Arms earplugs to the market and acted fraudulently, wantonly, and maliciously to the detriment of Plaintiffs.

185.     As a result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and have further suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendant and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## Count VIII - Fraudulent Concealment

186.     Plaintiffs incorporate by reference paragraphs 1-93 as if fully set forth herein.

187.     At all times relevant, Defendant misrepresented the safety and efficacy of the Dual-ended Combat Arms earplugs for their intended use.

188.     Defendant knew or was reckless in not knowing that its representations were false.

189.     In representations to Plaintiffs, Defendant fraudulently concealed and intentionally omitted the following material information:

    a.  that testing of the Dual-ended Combat Arms earplugs was deliberately flawed;

    b.  the amount of hearing protection provided by the Dual-ended Combat Arms earplugs;

    c.  that Defendant was aware of the defects in the Dual-ended Combat Arms earplugs;

    d.  that the Dual-ended Combat Arms earplugs were defective, and would cause dangerous side effects, including, but not limited to, hearing damage or impairment;

    e.  that the Dual-ended Combat Arms earplugs were manufactured negligently;

    f.  that the Dual-ended Combat Arms earplugs were manufactured defectively;

    g.  that the Dual-ended Combat Arms earplugs were designed defectively;

    h.  that the Dual-ended Combat Arms earplugs were designed negligently; and

    i.  that the Dual-ended Combat Arms earplugs were designed improperly.

190.     Defendant was under a duty to disclose to Plaintiffs the defective nature of the Dual-ended Combat Arms earplugs.

191.     Defendant had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used the Dual-ended Combat Arms earplugs, including Plaintiffs, in particular.

192.     Defendant's concealment and omissions of material facts concerning, *inter alia*, the safety and efficacy of the Dual-ended Combat Arms earplugs was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiffs into reliance, continued use of the Dual-ended Combat Arms earplugs, and actions thereon, and to cause them to purchase and/or use the product. Defendant knew that Plaintiffs had no way to determine the truth behind Defendant's concealment

and omissions, and that these included material omissions of facts surrounding the Dual-ended Combat Arms earplugs, as set forth herein.

193.     Plaintiffs reasonably relied on facts revealed which negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendant.

194.     By reason of the foregoing, Plaintiffs were caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and have further suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendant and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## Count IX - Negligent Misrepresentation

195.     Plaintiffs incorporate by reference paragraphs 1-93 as if fully set forth herein.

196.     Defendant had a duty to represent to Plaintiffs and the public in general that the Dual-ended Combat Arms earplugs had not been properly tested and were not found to be effective.

197.     Defendant was aware its testing procedures and fitting instructions were unlawfully manipulated.

198.     The representations made by Defendant were, in fact, false.

199.     Defendant failed to exercise ordinary care in the representation of the Dual-ended Combat Arms earplugs, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution into interstate commerce, in that Defendant negligently misrepresented the Dual-ended Combat Arms earplugs' safety and efficacy.

200.     Defendant breached its duty in misrepresenting the Dual-ended Combat Arms earplugs' serious defects to Plaintiffs.

201.     As a result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous side effects including sensorineural hearing loss and tinnitus, and have further suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendant and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## **Count X - Fraud and Deceit**

202.     Plaintiffs incorporate by reference paragraphs 1-93 as if fully set forth herein.

203.     Defendant conducted unlawful and improper testing on the Dual-ended Combat Arms earplugs.

204.     As a result of Defendant's unlawful and improper testing, Defendant blatantly and intentionally distributed false information which overstated the amount of hearing protection provided by the Dual-ended Combat Arms earplugs.

205.     As a result of Defendant's unlawful and improper testing, Defendant intentionally omitted and misrepresented certain test results to Plaintiffs.

206.     Defendant had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and Plaintiffs.

207.     The information distributed to Plaintiffs by Defendant contained material representations of fact and/or omissions concerning the hearing protection provided by the Dual-ended Combat Arms earplugs.

208.     These representations were all false and misleading.

209.     Upon information and belief, Defendant intentionally suppressed and/or manipulated test results to falsely overstate the amount of hearing protection provided by the Dual-ended Combat Arms earplugs.

210.     It was the purpose of Defendant in making these representations to deceive and defraud the public and/or Plaintiffs, to gain the confidence of the public and/or Plaintiffs, to falsely ensure the quality and fitness for use of the Dual-ended Combat Arms earplugs, and induce the public and/or Plaintiffs to purchase, request, dispense, recommend, and/or continue to use the Dual-ended Combat Arms earplugs.

211.     Defendant made the aforementioned false claims and false representations with the intent of convincing the public and/or Plaintiffs that the Dual-ended Combat Arms earplugs were fit and safe for use.

212.     These representations and others made by Defendant were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

213.     These representations and others made by Defendant were made with the intention of deceiving and defrauding Plaintiffs, were made to induce Plaintiffs to rely upon misrepresentations, and caused Plaintiffs to purchase, use, rely on, request, dispense, and/or recommend the Dual-ended Combat Arms earplugs.

214.     Defendant recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms earplugs to the public at large, and Plaintiffs in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives.

215.     Defendant willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of the Dual-ended Combat Arms earplugs by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms earplugs.

216.     Defendant willfully and intentionally failed to disclose the truth, failed to disclose material facts, and made false representations with the purpose and design of deceiving and lulling Plaintiffs into a sense of security so that Plaintiffs would rely on the representations made by Defendant and purchase, use, and rely on the Dual-ended Combat Arms earplugs.

217.     Plaintiffs did, in fact, rely on and believe Defendant's representations to be true at the time they were made and relied upon the representations and was thereby induced to use and rely on the Dual-ended Combat Arms earplugs.

218.     At the time the representations were made, Plaintiffs did not know the truth regarding the dangerous and serious safety concerns of the Dual-ended Combat Arms earplugs.

219.     Plaintiffs did not discover the true facts with respect to the dangerous and serious health and/or safety concerns of the Earplugs and Defendant's false representations, nor could Plaintiffs with reasonable diligence have discovered the true facts.

220.     Had Plaintiffs known the true facts with respect to the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms earplugs, Plaintiffs would not have used and/or relied on the Dual-ended Combat Arms earplugs.

221.     Defendant's aforementioned conduct constitutes fraud and deceit and was committed and/or perpetrated willfully, wantonly, and/or purposefully on Plaintiffs.

222.    As a result of the foregoing acts and omissions, Plaintiffs were caused to suffer serious and dangerous side effects including sensorineural hearing loss and tinnitus, and have further suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendant and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## Count XI - Gross Negligence

223.    Plaintiffs incorporate by reference paragraphs 1-93 as if fully set forth herein.

224.    The wrongs committed by Defendant were aggravated by the kind of malice, fraud, and grossly negligent disregard for the rights of others, the public, and Plaintiffs, for which the law would allow the imposition of punitive damages (and which Plaintiffs seek, as set forth below).

225.    Such punitive damages are appropriate given Defendant's conduct, as further alleged herein, which includes the failure to comply with applicable guidelines and standards, including, but not limited to, ANSI, OSHA, EPA, and MPID guidelines and standards, which recklessly caused substantial injuries to Plaintiffs (or, when viewed objectively from Defendant's standpoint at the time of the conduct, involved an extreme degree of risk considering the probability and magnitude of the potential harm to others). Defendant was actually and subjectively aware of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, or included a material representation that was false, with Defendant knowing that it was false or with reckless disregard as to its truth and as a positive assertion, with the intent that the representation is acted on by Plaintiffs.

226.    Plaintiffs relied on the representations and suffered injuries as a proximate result of this reliance.

227.     Plaintiffs seek to assert claims for punitive damages in an amount within the jurisdictional limits of the Court, as set forth below.

228.     Plaintiffs also allege that the acts and omissions of Defendant, whether taken singularly or in combination with others, constitute gross negligence that proximately caused the injuries to Plaintiffs. In that regard, Plaintiffs seek punitive damages in amounts that would punish Defendant for its conduct, and which would deter other manufacturers from engaging in such misconduct in the future.

WHEREFORE, Plaintiffs demand judgment against Defendant and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## VI.     **PUNITIVE DAMAGES**

229.     Plaintiffs incorporate by reference paragraphs 1-93 as if fully set forth herein.

230.     Defendant has acted willfully, wantonly, with an evil motive, and recklessly in one or more of the following ways:

a.  by failing to disclose, concealing, and suppressing material facts regarding the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms earplugs;

b.  by failing to disclose the truth and making false representations with the purpose and design of deceiving and lulling Plaintiffs, and others, so that they would use and rely upon the Dual-ended Combat Arms earplugs; and

c.  by falsely representing the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms earplugs to the public at large, and Plaintiffs in particular.

WHEREFORE, Plaintiffs demand judgment against Defendant and request compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## VII.    TIMELINESS AND TOLLING OF STATUTES OF LIMITATIONS

231.    Under the Servicemembers Civil Relief Act, the periods of Plaintiffs' military service may not be included in computing any statute of limitations applicable herein.  *See* 50 U.S.C. § 3936.

232.    Plaintiffs could not, by the exercise of reasonable diligence, have discovered Defendants' wrongful acts as the cause of his injuries at an earlier time, because, at the time of these injuries, the cause was unknown to Plaintiffs. Plaintiffs did not suspect, nor did Plaintiffs have reason to suspect, the cause of these injuries, or the tortious nature of the conduct causing these injuries, until less than the applicable limitations period prior to the filing of this action.

233.    Further, the running of the statute of limitations has been tolled by reason of Defendant's fraudulent concealment. Through their affirmative misrepresentations and omissions, Defendant's actively concealed from Plaintiffs the risks associated with the defects in the Dual-ended Combat Arms earplugs.

234.    As a result of Defendant's actions, Plaintiffs were unaware, and could not reasonably know or have learned through reasonable diligence that they had been exposed to the defects and risks alleged herein, and that those defects and risks were the direct and proximate result of Defendant's acts and omissions.

235.    Through Defendant's affirmative misrepresentations and omissions pertaining to the safety and efficacy of the Dual-ended Combat Arms earplugs, Plaintiffs were prevented from

discovering this information sooner because Defendant misrepresented and continued to misrepresent the defective nature of the Dual-ended Combat Arms earplugs.

### VIII. <u>JURY DEMAND</u>

236.        Plaintiffs hereby demand a trial by jury as to all claims in this action.

### IX. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray as follows:

A.        that process issue according to law;

B.        that Defendant be duly served and cited to appear and answer herein, and that after due proceedings are had, that there be judgment in favor of Plaintiffs and against Defendant for the damages set forth below, along with court costs, pre-judgment and post-judgment interest at the legal rate;

        1.  pain and suffering (past and future);

        2.  wage loss (past and future);

        3.  loss of earnings and loss of earning capacity;

        4.  medical expenses (past and future);

        5.  loss of enjoyment of life (past and future);

        6.  mental anguish and distress (past and future);

        7.  disfigurement (past and future);

        8.  physical impairment (past and future);

C.        awarding Plaintiffs their costs and expenses in this litigation, including, but not limited to, expert fees and reasonable attorneys' fees;

D.        punitive or exemplary damages in such amounts as may be proven at trial; and

E.        awarding Plaintiffs such other and further relief as may be just and proper.

Dated: July 14, 2020

Respectfully submitted,

Law Offices of Richard R. Robles, P.A.
905 Brickell Bay Drive, Suite 228
Miami, Florida 33131
Telephone: (787) 281-9200
Primary e-mail: rrobles@roblespa.com
Secondary e-mail: lmartinez@roblespa.com
rquintero@roblespa.com

/s/ Richard R. Robles, Esquire
Richard R. Robles, Esquire
Puerto Rico Federal Bar #229913

*And*

TIRADO-LUCIANO & TIRADO
2655 Le Jeune Rd., Suite 1109
Coral Gables, FL 33134
Tel: (305) 390-2320
Fax: (305) 390-2321

*/s/ Alex Tirado-Luciano*
ALEX TIRADO-LUCIANO, Esq.
Florida Bar No.: 070894
atl@TLTirado.com

**COUNSEL PENDING PRO HAC VICE
ADMISSION**